## NELSON v. BROWN.

SHERIFF'S SALE.—Where two tracts of land, each containing 80 acres, are mortgaged by the description usual in such congressional sub-

divisions, and the mortgage is foreclosed, and the same description is continued in the decree, and the order of sale issued thereon, and the sheriff proceeds to sell by the same description, and having offered the rents and profits without receiving a bid, offers first one tract of 80 acres, in fee-simple, and, receiving no bid therefor, then offers the other in like manner, and with like result, and then offers both together, and receives a bid therefor sufficient to pay the debt, interest and costs, and accepts the same; such sale, in the absence of any request or direction from any person having a right to control the manner of sale, should be held regular and valid, notwithstanding the land might have been offered in smaller parcels; and, under such circumstances, an apparent or supposed inadequacy of consideration can not be resorted to as a separate, distinct, and, in itself, sufficient, legal cause for setting aside such sale.

PARTIES.—And in such case, where the purchaser is the attorney of the plaintiff in the suit, and he tendered the money to the sheriff, and, having actually paid the sheriff the amount of the costs, then receipted for the principal and interest of the debt on the order of sale, and then demanded a deed, but the debt was at the time of such sale in fact the property of another person, and not of the plaintiff, and an application is made to set aside the sale, upon grounds which would involve the interests of the owner of the judgment, and the plaintiff in the application to set aside the judgment offers to pay the mortgage debt, and prays to have the judgment satisfied, the owner of the judgment is a necessary party to the action.

APPEAL from the *Vigo* Circuit Court.

HANNA, J.—This was a proceeding instituted by written motion, to set aside a sale made upon a decree of foreclosure of a mortgage. The motion was sustained, and the sale set aside. A judgment for about 650 dollars, and a decree of foreclosure of a mortgage on 160 acres of land, had been entered in the said Circuit Court, an order of sale issued, and, after notice, the property was exposed to sale—first the rents

and profits, then the land in 80 acre tracts, then altogether—and *Peirce*, the attorney of the plaintiff, *Nelson*, bid the amount due, including costs, to whom the whole was struck off, on the 9th day of *November*, 1861. The sheriff tendered a certificate of the sale to *Peirce*, and demanded the money or a receipt. *Peirce* tendered the money and demanded a deed, but refused to pay the money on reception of the certificate. Thereupon, his law-partner, *Mack*, in his presence, executed to the sheriff a receipt in their names, as attorneys of *Nelson*, for the amount due him; and *Peirce* paid the costs and accepted the certificate, which he returned to the sheriff in a few days. The lands were worth from 5000 to 7000 dollars, at the ordinary selling rates in the neighborhood. *Brown*, the mortgagee, in about one month afterwards, deposited in the clerk's office 727 dollars and 68 cents, which, so far as the evidence shows, he desired to apply in payment of said decree.

These facts appear in the pleadings, and are well supported by the evidence. Other allegations are not so clearly sustained, and will be noticed in their order.

The reasons for setting aside the sale urged are:

1. The land should have been offered in smaller parcels than *eighty* acres at a time.

2. Gross inadequacy of price.

3. The purchase-money was not paid.

4. The amount of the decree has been paid by *Brown*.

There is no direct charge of fraud in reference to said sale. As to the first proposition above, the simple question therefore is, whether it was the duty of the sheriff to offer said lands for sale in smaller tracts than he did. The land was two 80 acre tracts, lying in different sections, but adjoining. It was offered in 80 acre tracts corresponding with the description in the mortgage and the decree, both of which adopted the descriptions known in congressional sub-divisions. There

was no allegation or proof that there was any other natural or artificial division—by hills, streams, roads, or canals, &c.

The averment in the motion is, that, by the failure to offer in smaller tracts than 80 acres, bidders were prohibited from bidding on the same. The evidence is somewhat conflicting upon the question of the susceptibility of the land of division in small parcels, but the preponderance of testimony shows it could have been so divided without injury, &c. On the point, whether it would have sold if it had been so divided, the evidence is still more unsatisfactory. There was no request by the defendant that it should be so offered.

Under these circumstances, we are of opinion that it was not the absolute duty of the sheriff, in the first instances to cause the land to be divided, in order that he might offer it in smaller parcels than the tracts designated in the order of sale. That order directed him to sell the land, describing it, or so much thereof as might be necessary to satisfy the same.

It thus appearing that it was not the absolute duty of the sheriff to cause smaller divisions to be made, that he might offer it for sale in accordance therewith, we are next to consider whether it was discretionary with him to do so or not, as he might think best; and if yea, whether it was, under the circumstances, a prudent exercise of a sound discretion to fail in making such divisions and offers.

Our statute, bearing upon the subject, is as follows:

"If the estate shall consist of several lots, tracts, and parcels, each shall be offered separately; and no more of any estate shall be offered for sale than shall be necessary to satisfy the execution, unless the same is not susceptible of division." 2 R. S., p. 141.

It will be recollected that the land was offered in the subdivisions or parcels described in the mortgage, decree, and order of sale delivered to the sheriff; that said decree and order of sale directed that said land, (the whole of it,) or so

much thereof as might be necessary, should be sold to satisfy said debt. Now, can the question of inadequacy of consideration be raised, where the lands thus ordered to be sold have been so sold? The Court certainly contemplated that, perhaps, a sale of all said lands might be necessary to satisfy said debt, or it would not have so decreed. The Court did not, by said decree, divide or distinguish said lands into parcels, other than as described by the parties in the mortgage, and subsequently offered by the sheriff, namely, in 80 acre parcels. There is no evidence that there is any other natural or artificial mode of divisions or enjoyments of said lands; so that an apparent or supposed inadequacy of consideration can not, clearly, under these circumstances, be resorted to as a separate, distinct, and, of itself, sufficient legal cause for setting aside said sale. Nor do we believe it is a sufficient ground for equitable interference. Is it, in view of, and coupled with, the failure of the sheriff to offer in smaller parcels than those described in the mortgage, decree, and order of sale? This brings us back to the question whether the sheriff acted prudently and discreetly in the mode of sale adopted.

The decree and the statute are to the same general effect, namely, that so much, and no more, of said estate should be offered for sale as might be necessary to satisfy the debt How was the sheriff to know the exact amount that might be necessary to satisfy the claim? The execution defendant made no demand, request, or even suggestion, on that point, so far as we can see. The sheriff might have had some individual knowledge of the general and relative value of lands in that neighborhood, but there was nothing brought home to him officially on that subject. The offer of the whole for the term of seven years, brought no bid. The offer of the title to the smallest sub-division named in the order of sale, brought a like result. The offer of the whole brought a bid

equal in amount to the debt, interest, and costs, and no more. Practically, as developed in the sheriff's proceedings, this was the smallest quantity that would satisfy the order of sale. If, upon the offer of the first 80 acres, the bidding had disclosed a value above the debt, the duty of the sheriff might have been, perhaps, to have paused in the offer, and made an attempt, by the sale of smaller parcels, to make the debt; but this is a proposition not before us, and one upon which we do not desire to go out of the way to express an opinion. So far as the proceedings of the sheriff show, a smaller quantity than the whole would not have brought the requisite amount. In the absence of any charge of fraud in those proceedings, we do not see how, under these circumstances, it could be concluded that he did not discharge his official duty in that respect with such a degree of fairness and reasonable discretion as would give the purchaser a valid title.

The next point made is, that there was no payment of the amount bid. It is urged that the receipt on the execution was not properly executed; and, if it was, that it was not binding upon the plaintiffs, nor in satisfaction of the decree. The reasons given are, that an attorney has no power to give a receipt in satisfaction of a debt, judgment, or execution of his client, unless specially authorized so to do, without the payment and reception of the money; and if he had such authority, that the real attorney, the attorney of record in the said case, did not execute said receipt. It is answered that the facts herein make a case in which the attorney of record had such power; that he executed it, or caused it to be executed, in a manner that is obligatory upon his client; and if not, that the real party in interest approved and sanctioned the act and thereby gave it validity.

*Nelson* recovered the judgment, and was the plaintiff in the execution, but the real owners of the same, at the time of sale, appear to have been *Babcock & Co.*, merchants. It is

shown, that on the day after the sale, Peirce wrote them, apprising them of said sale, and that he had purchased said lands, and that they replied, that they supposed it was the best that could have been done. The appellee contends that this made Peirce the trustee for said Babcock & Co., if they see proper to claim said lands, or the payment of their money out of the same if he should fail to pay it otherwise, and was a full sanction of his act; that it would have been a vain proceeding to have paid the money, on the bid, to the sheriff and then, in ten minutes, have receipted therefor.

It was shown that the money had not been paid to Nelson, the apparent plaintiff, nor to Babcock & Co., the real parties entitled thereto; but Mr. Mack testified that it was subject to their order at any time.

Under these circumstances, a tender having been made of the money, and demand of a deed, the execution of the receipt on the order of sale, &c.; was the sale in that respect valid? It will be remembered that the purchaser is not made a party to this proceeding, so that no question can arise upon the point, whether the tender made was continued or not. Therefore, passing over the question relative to the execution and power to execute the receipt without the payment of the money, it appears to us the tender made and demand of a deed were all that were required of the bidder, until he shall have his day in court. If the bidder had been a person other than the attorney for the plaintiff, we are not aware of any thing that would, under the circumstances shown, have prevented said attorney from accepting from said bidder the sum due his client and thus tendered. But as the same person was, in this instance, acting in both characters, we can not say, until he may be required to make a showing upon that point, whether he accepted, as attorney, the tender made as a purchaser. The evidence that the money was subject to the order of the plaintiff, is some indication to that effect.

Nelson *v.* Brown.

The last point made is that the judgment defendant has paid the debt. As this payment is shown to have been made after the sale, it can have no force, if that sale was valid. If the circumstances were such as to make it necessary for the defendant to have tendered the amount of the money bid, or paid on the bid, before he could move in an effort to get rid of said sale, then such payment to the clerk might possibly be construed into a deposit for the use of the bidder. The truth is, the deposit with the clerk was made, we suppose, under the impression that the redemption law, heretofore passed upon by this court, was operative.

There was a demurrer to the written motion overruled. It is urged that as neither the purchaser at the sheriff's sale nor the owners of the judgment are made parties, such a state of facts was disclosed as made it impossible to render a judgment binding upon them. We suppose this may be true to some extent. A judgment herein would not conclude persons not parties, &c; but at the same time such judgment might necessarily greatly affect their interests. The result of this proceeding might deprive the bidder at said sale, of the benefit of his bid, or at least place him in a position to greatly prejudice him in any effort he might make to enforce his rights, growing out of it. He should have been made a party, that the whole controversy might have been settled in one suit. And as the defendant sought to have satisfaction entered on the judgment, this could only have been decreed after the real parties in interest owning the said judgment, had been notified.

*Per Curiam.*—The judgment of the court setting aside said sale is reversed, with directions to make new parties as indicated, and that the further proceedings be in accordance with the views herein expressed.

*Ballard Smith* and *John P. Baird,* for the appellant.

*Thompson, Scott & Crane,* for the appellee.